**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AHMAD JAVED EHSAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:26-cv-878 |
| BLANCHE, *et al.*, | ) | Judge Marilyn J. Horan |
| | ) | |
| Respondents. | ) | |
| | ) | |

## <u>ORDER</u>

Presently before the Court is Petitioner Ahmad Javed Ehsan's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 3), Respondents' Response to Petition for Writ of Habeas Corpus (ECF No. 6), and Petitioner's Response to Respondents' Arguments (ECF No. 7). The petition is now fully briefed; and thus, ripe for disposition. Upon review of the parties' arguments, the Court will **GRANT IN PART** Petitioner's Petition for Writ of Habeas Corpus.

Petitioner is a "citizen and native of Afghanistan[,]" who entered the United States without inspection through California on December 31, 2024. *See* ECF 3, p. 9; ECF 6, p. 2. Around 30 minutes after Petitioner's unlawful entry, a Customs and Border Patrol officer stopped and detained Petitioner, and he was then transported to the San Diego Detention Facility for processing. *See* ECF 3, p. 9; ECF 6, p. 2. Since that date, Petitioner has remained detained without release in various facilities. *See* ECF 3, p. 9; ECF 6, p. 3.

On October 28, 2025, an immigration judge denied all forms of relief and ordered Petitioner removed to Afghanistan, and Petitioner subsequently appealed this decision to the Board

of Immigration Appeals ("BIA") on November 27, 2025. *See* ECF 3, p. 10; ECF 6, p. 3. As of last update to the Court, this appeal appears to still be pending. *See* ECF 3, p. 9; ECF 6, p. 3.

In his petition and subsequent reply, Petitioner asserts that "procedural due process requires that [he] be released or, at minimum, afforded a constitutional[ly] adequate bond hearing at which the government must justify [his] continued detention with strong, clear and [convincing] evidence." *See* ECF 3, p. 12 (capitalization and spelling adjusted). In support of this assertion, Petitioner argues that his prolonged detention violates the Due Process Clause and his Fifth Amendment rights, citing to various cases. *Id.* at 12-13.[1]

In response, Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. 1225(b)[2] and that his "current detention also comports with due process." *See* ECF 6, p. 3-8.[3] They also "submit that if the Court finds that Petitioner's detention is unreasonable, it should order a bond hearing in Immigration Court, instead of release." *Id.* at 7.

---

[1] Petitioner asks the Court to use the six-factor test found in *Banda v. McAleenan* to analyze the reasonableness of his detention. 385 F. Supp. 3d 1099, 1106-7 (W.D. Wash. 2019) (conducting a case-specific analysis which considered the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.") In the Third Circuit, however, all district courts use the four-factor test found in *German Santos.* 965 F.3d 203, 212-3 (3d Cir. 2020) (evaluating the petitioner's duration of detention, likelihood of continued detention, reasons for delay, and conditions of confinement). As several of these factors are identical, the Court finds no conflict in using *German Santos.*

[2] The Court notes that Petitioner does not contest the application of 8 U.S.C. § 1225(b) to his detention. *See* generally ECF 3; ECF 7. Thus, the Court will assume that both parties agree that he is detained subject to § 1225(b) and will not address it further.

[3] Respondents also argue that Petitioner's civil rights claims are properly raised in a civil rights action, rather than a habeas petition. *See* ECF 6, p. 12-13. The Court disagrees with their interpretation of the petition, however, and finds that Petitioner does not raise his conditions of confinement as a civil rights claim. *See* ECF 3, p. 11. Rather, he raises the conditions of his confinement within the context of the "conditions of detention" factor, found in both *Banta* and *German Santos*. *Id.* The Court's interpretation is also confirmed by the lack of a civil rights claim in the petition's numbered counts. *Id.* at 13.

In *Jennings*, the Supreme Court determined that § 1225(b) "mandate[s] detention until a certain point and authorize[s] release prior to that point only under limited circumstances." *See Jennings v. Rodriguez*, 583 U.S. 281, 301 (2018).[4] As such, it held that § 1225(b) cannot "reasonably be read to limit detention to six months." *Id.*; *cf. Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001) (construing § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal" and holding that six months is a presumptively reasonable period).

However, although "Petitioner's detention under 8 U.S.C. § 1225(b) does not *statutorily* entitle him to a bond hearing pending his asylum proceedings[,]" courts in this Circuit have "held 'that an arriving alien such as Petitioner has a constitutional due process right to a bond hearing once his detention becomes unreasonable to the same extent as an alien who is subject to removal under § 1226(c).'" *See Akhmadjanov v. Oddo,* No. 3:25-CV-35, 2025 WL 660663, at *2–4 (W.D. Pa. Feb. 28, 2025) (quoting *A.L. v. Oddo*, No. 3:24-CV-302, 2025 WL 352471, at *2 (W.D. Pa. Jan. 6, 2025); *see also Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (collecting cases which determined "arriving aliens detained under § 1225(b) have a due process right to avoid unreasonably prolonged detention"); *German Santos*, 965 F.3d at 210-11 (concluding that, although the Supreme Court's decision in *Jennings* "foreclosed reading the statutory text as guaranteeing periodic bond hearings," the duration of a petitioner's detention can be used to establish a base level of concern before evaluating it "along with all other circumstances[.]").

---

[4] "With a few exceptions not relevant here, the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2). 8 U.S.C. § 1182(d)(5)(A). That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released." *Jennings*, 583 U.S. at 300.

3

Namely, the *A.L.* court determined that, "[i]n assessing whether [§ 1225(b)] detention has become unreasonable[,]" a district court should apply "the same factors laid out in *German Santos*." *A.L.*, 2025 WL 352471, at *3. As such, the Court will utilize the four-factor test from *German Santos*; and thus evaluate the following factors: (i) the duration of detention; (ii) whether the detention is likely to continue; (iii) reasons for the delay; and (iv) whether the detainee's conditions of confinement are "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 210–11.

First, when considering whether mandatory detention under § 1225(b) has become unreasonable, "[t]he most important factor is the duration of detention." *See id.* at 211. Further, while there is no bright-line threshold of time that permits a court to presume that detention has crossed the line from reasonable to unreasonable, detention does become "'more and more suspect'" the longer it continues. *See id*. (quoting *Diop v. ICE/Homeland Sec*., 656 F.3d 221, 234 (3d Cir. 2011)).

Here, Petitioner has been detained over 19 months. *See* ECF 3, p. 13. This length of detention "falls well within the range where courts have held that delays start to become unreasonable." *See Van v. Oddo*, No. 3:25-CV-00322, 2025 WL 3492736, at *6 (W.D. Pa. Dec. 5, 2025), *reconsideration denied*, No. 3:25-CV-00322, 2026 WL 395068 (W.D. Pa. Feb. 12, 2026) (finding 15 months without a bond hearing unreasonable); *see, e.g., Akhmadjanov*, 2025 WL 660663, at *4 (17 months)*; Deonarine v. Oddo,* No. 3:25-CV-00081, 2025 WL 1919726, at *2 (W.D. Pa. July 11, 2025) (20 months); *Nyamekye v. Oddo*, No. CV 22-240J, 2023 WL 9271844, at *3 (W.D. Pa. Mar. 28, 2023), *report and recommendation adopted as modified*, No. CR 3:22-CV-240, 2023 WL 9271879 (W.D. Pa. May 4, 2023) (stating that "[c]ourts within this circuit have

previously found detention for over one year weighs in favor of the petitioner"; citing cases). Thus, this first factor weighs strongly in favor of Petitioner.

Next, when evaluating the second factor, a habeas court must consider "whether the detention is likely to continue." *German Santos,* 965 F.3d at 211. Here, Petitioner asserts that his "removal proceeding is not likely" to be completed "in the reasonabl[y] foreseeable future because of the pending appeal case at the BIA, [w]hich when sustained might lead to remand for further hearing[.]" *See* ECF 3, p. 13. Petitioner also states that if the appeal is dismissed, he has "intention to appeal further" to the Third Circuit because he strongly "believe[s] the [immigration judge] erred in the application of factual and legal finding." *Id.* Consequently, he alleges that these judicial reviews could result in another estimated two years of detention. *Id.* As such, this factor weighs strongly in Petitioner's favor. *See German Santos*, 965 F.3d at 212 (concluding that this factor weighed in the petitioner's favor where the petitioner was awaiting BIA decision and potential Third Circuit review).

Third, in assessing the impact of the reasons for delay upon the reasonableness of detention, a Petitioner's "appeals and applications for discretionary relief [are not held] against him[.]" *Id.* However, neither are delays or alleged errors held against the government "[a]bsent carelessness or bad faith[;]" for "[n]o system of justice can be error-free, and those errors require time to fix." *Id.* (citing *Diop*, 656 F.3d at 234). Here, neither party alleges any specific reasons for delay. *See* ECF 3, p. 10 (stating only that the initial interview was delayed "for unknown reasons" and that

the hearings were "delayed due to multiple reasons"); *see also* ECF 6, p. 2-3 (providing the processing timeline of this case).[5] Thus, this factor remains neutral.

Finally, when assessing the reasonableness of a petitioner's detention, "we cannot ignore the conditions of confinement." *German Santos*, 965 F.3d at 212–13 (citing *Chavez-Alvarez*, 783 F.3d at 478). In particular, a district court must examine the factual circumstances particular to the petitioner in order to assess whether "his detention is indistinguishable from criminal punishment[,]" "[d]espite its civil label[.]" *See German Santos*, 965 F.3d at 210.[6]

Here, Petitioner alleges that his detention is in a "jail like setting[;]" and that "DHS/ICE is treating [him] as a criminal[,]" abusing him, and "keeping [him] at the same facility and situation with those who have serious violence crimes here in U.S. and other countries[,]" despite his own lack of criminal history.[7] *See* ECF 3, p. 9-12. He also alleges that his access to medical care, dentistry, information and online tools, outdoor activities, communication, privacy, sleep, and food are limited; and that the hygiene standards are lacking as well. *Id.*; ECF 7, p. 5. Further, despite being given the opportunity to respond to these allegations, Respondents do not address the merit of Petitioner's claims. *See* ECF 6, p. 12-13; *c.f. Nunez v. Oddo*, 2025 WL 2443437 (W.D. Pa. Aug. 25, 2025) (referencing Respondents' ability to provide affidavits, declarations, or other evidence

---

[5] Although Petitioner's counsel requested two continuances of the individual merits hearing, these motions were denied both times by the immigration judge. *See* ECF 6-3, p. 5. As such, these motions do not influence the Court's analysis.

[6] A court in this District previously recognized that conditions at Moshannon Valley Processing Center may resemble prison-like confinement. *See, e.g., C.B. v. Oddo*, 2025 WL 2977870, at *7 (W.D. Pa. Oct. 22, 2025).

[7] The Court notes that Petitioner alleges "Stewart Detention Center" is a prison, but at the time of filing this habeas petition, Petitioner was detained at the Moshannon Valley Processing Center. *See* ECF 3, p. 9; ECF 6, p. 3. Thus, the Court will assume that he describes conditions present at Moshannon Valley Processing Center. The Court notes, however, that even if Petitioner is describing a different detention center, Petitioner would still be granted a bond hearing due to the first and second factors weighing strongly in his favor.

regarding conditions of confinement). As such, given Respondents' silence, this factor will weigh in favor of Petitioner as well.

Therefore, because three factors weigh in Petitioner's favor, while one remains neutral, the Court finds, based upon the specific facts of the petitioner's detention before it and underneath the standard set within *German Santos*, that Petitioner's detention under § 1225(b) has become unreasonable.

As for relief, like other district courts in this Circuit, the Court finds that Petitioner may only appropriately be afforded a constitutionally adequate bond hearing before an Immigration Judge, rather than being granted immediate release. *See, e.g., Davis v. Warden Pike County Correctional Facility*, No. 4:22-cv-20, 2022 WL 4391686, at * 4 (M.D. Pa. Aug. 18, 2022) ("The only remedy for an alien challenging [his] mandatory detention is a bond hearing."); *German Santos*, 965 F.3d at 210, 214 ("[W]hen detention becomes unreasonable, the Due Process Clause demands *a bond hearing*.") (quoting *Diop*, 656 F.3d at 233); *A.L.*, 761 F.Supp.3d at 826–27.

Accordingly, this 11th day of August 2026, it is hereby **ORDERED** as follows:

1. Petitioner's Habeas Petition is **GRANTED IN PART** in so much as it requests that this Court order that he be afforded a constitutionally adequate bond hearing before an Immigration Judge.

2. Respondents shall provide Petitioner a constitutionally adequate bond hearing before a neutral Immigration Judge within thirty (30) days of the entry of this Order. This timeline may be extended by Petitioner upon a motion to the Immigration Judge.

3. Petitioner's Habeas Petition, ECF No. 3, is **DENIED** in all other respects.

4. Petitioner's Motion Requesting a Status Conference, ECF No. 8, is **DENIED** as moot.

7

5.  With no further action required by the Court at this time, the Clerk of Court shall mark this

matter closed.

DATED: <u>August 11, 2026</u>

Marilyn J. Horan
United States District Court Judge

8